### McINTOSH–HUNTINGTON CO. v. REED.

(Circuit Court, W. D. Pennsylvania. January 3, 1898.)

1. PRINCIPAL AND SURETY—DISTINCTION BETWEEN SURETYSHIP AND GUARANTY.
   The distinction between the obligating of a surety and a guarantor is that the surety undertakes to pay if the principal does not, while the guarantor undertakes to pay if the principal cannot.

2. SAME—CONSTRUCTION OF CONTRACT—SURETYSHIP OR GUARANTY.
   A written instrument reciting that, for the purpose of obtaining credit with a manufacturing company for a third person, the maker guaranties the account of such third person, within certain limits as to time and amount, and agrees on demand to pay any balance unsettled on a certain date, is a contract of suretyship, and not of guaranty; and on its delivery

by the beneficiary, and the extension of credit by the payee, the maker became absolutely and directly liable to the payee for any balance due on the date named, without notice of its acceptance by the payee.

This is a suit on an instrument given to secure payment for goods furnished by plaintiff upon a written contract or order.

The following are copies of the order, and the instrument securing the same, referred to in the opinion as Exhibits A and B.

### Exhibit A.

Cleveland, Dec. 6, 1895.

The McIntosh-Huntington Co., Cleveland, O.—Gentlemen: Please enter my order for one hundred Crawford bicycles, at the following prices: #23, $30; #25, $33; #27, $37. Ladies' machine, advance $1.50 each. All f. o. b. Hagerstown, Md. Terms, 60 days, with bond, or 2% for cash if paid within 10 days from date of invoice. Territory: It is understood that I am to have the exclusive control of Crawford bicycles, under Crawford nameplates, in the following counties in Pa.: Erie, Crawford, Warren, Venango, Mercer. It is understood that you are to have privilege of selling same machines in this territory under your own brand. I will furnish specifications and give dates of shipment on or before Dec. 15th. I will also furnish you a good bond for my probable purchases during the season.

Yours, truly,                                        Leo Schlaudecker.

Approved Dec. 16.
Enright.

### Exhibit B.
### Guaranty.

For the purpose of obtaining credit for Mr. Leo Schlaudecker, of Erie, Pa., I hereby guaranty his account with the McIntosh-Huntington Co., to the extent of four thousand dollars ($4,000), to cover all purchases made between Dec. 6th, 1895, and January 15th, 1897. In the event of the said McIntosh-Huntington Co. having a claim against the said Leo Schlaudecker unsettled on January 15th, 1897, I agree to pay same ten days after the demand has been made upon me.

[Signed]                                        Chas. M. Reed.

H. C. Parsons, for plaintiff.
T. A. Lamb, for defendant.

BUFFINGTON, District Judge. This suit is brought by the McIntosh-Huntington Company against Charles M. Reed to recover the sum of $3,981.09, with interest from January 15, 1897. Trial by jury was waived. The court finds the facts and law as herewith noted:

### Findings of Fact.

(1) The plaintiff is a corporation duly organized under the law of the state of Ohio, the defendant is a citizen and resident of the state of Pennsylvania, and the amount in dispute is $3,981.09, with interest. (2) On December 6, 1895, Leo Schlaudecker gave to the plaintiff company a written order for bicycles, and subsequently the plaintiff company sent to Schlaudecker, for signature by Reed, the paper on which this suit is based, which paper Reed signed on December 10, 1895, and returned to Schlaudecker. (Copies of said papers are herewith attached, marked Exhibits A and B, and are parts of these findings.) This latter paper Schlaudecker returned to the plaintiff. Meanwhile the Schlaudecker order had been in the hands of one Enright, the credit man of the plaintiff, awaiting the return of Reed's paper. On

89 F.—30

receipt of it, Enright, on December 16, 1895, stamped the order "Approved," and thereafter bicycles were furnished Schlaudecker on the strength of Reed's engagement. No notice was given to Reed by the plaintiff of its acceptance of Schlaudecker's order, or of his (Reed's) engagement, or of the furnishing of bicycles to Schlaudecker. (3) On January 15, 1897, there was owing by Schlaudecker to the plaintiff for bicycles furnished as above the sum of $3,981.09. Notice was given the defendant of said fact on said day, and on January 26, 1897, demand was made of him for payment. No payment was made, and thereafter suit was brought to recover that sum.

### Conclusions of Law.

As found above, Schlaudecker had placed an order for bicycles with the plaintiff, and, by the terms of his order, had agreed to furnish security for his probable purchases. In pursuance of that arrangement, plaintiff furnished Schlaudecker with the forms of security desired. This paper the defendant signed, and placed in Schlaudecker's hands. The latter delivered it to the plaintiff, and it thereupon extended to him the credit desired. What was the relationship established thereby between the plaintiff and the defendant? Kramph v. Hatz, 52 Pa. St. 529, draws the distinction between a surety and a guarantor. A surety undertakes to pay if the debtor does not, while a guarantor undertakes to pay if the debtor cannot. In Reigart v. White, Id. 440, it is stated that in suretyship there is a direct liability to the creditor for the act to be performed, while a guaranty is a liability only for the ability of another to perform this act. In Seltzer v. Greenwald, 2 Wkly. Notes Cas. 395, it is well said: "A suretyship is a direct contract to pay the debt of another. It insures the particular claim." Tested by this standard, it would seem that Reed's engagement was one of suretyship, and not guaranty. That the word "guaranty" was used in describing the paper, and that term employed in the undertaking itself, are not controlling facts. Sherman v. Roberts, 1 Grant, Cas. 261. The true meaning of the paper is reached from ascertaining from the whole of it what it was meant to effect. The engagement therein specified was absolute, definite, and unconditional. There was no condition to be performed by the plaintiff, except the extending of the credit which it was the averred purpose of the paper to secure. Upon such extension of credit, and the existence of an unsettled account within a fixed limit, and on a day certain, the absolute, unconditional promise of the defendant to pay attached. The paper being an absolute, direct, and unconditional promise, engagement and assumption by the defendant, as his own, of Schlaudecker's indebtedness in existence on the day named, we see no reason why notice of the acceptance of that undertaking should be given the defendant. The paper was absolute and unconditional in its terms. Manifestly, it was given to Schlaudecker for delivery. Its self-announced purpose was to secure credit; and the absolute, unconditional character of Reed's promise to pay the debt thus created, coupled with the extension of the credit sought, operated as an immediate acceptance by Reed's own authority of his offer of suretyship. See Reigart v. White, 52 Pa. St. 438. In accordance with these views, we are of opinion

the law is with the plaintiff, and that it is entitled to recover the amount of its claim, with interest.

## Finding of the Court.

We find in favor of the plaintiff and against the defendant for the sum of $3,981.09, with interest from January 26, 1897.